IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TROY HERD,

    Petitioner,

v.                                                             No. CIV 08-1040 MCA/LFG

GEORGE TAPIA, Warden , and
GARY K. KING, Attorney General for
the State of New Mexico

    Respondents.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

### Findings

    1.    This is a proceeding on an application for writ of habeas corpus brought under 28 U.S.C. § 2254, filed November 6, 2008. [Doc. 1]. Petitioner Troy Herd ("Herd"), currently confined at the New Mexico State Penitentiary in Santa Fe, New Mexico, challenges the Judgment and Order Partially Suspending Sentence entered on August 15, 2006, by the Third Judicial District Court in <u>State v. Herd</u>, No. CR 2005-0884 (Doña Ana County, New Mexico). [Doc. 9, Exhibit A.]

---

[1]Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

2. As grounds for federal habeas review, Herd raises two claims: (1) the habitual offender enhancement should have been imposed only once, rather than on multiple, individual counts for which Herd was convicted; and (2) the state district court's failure to appoint an attorney to amend his state habeas petition violated Rule of Criminal Procedure 5-802, because "he was relying on the appointment of an attorney to amend his petition" [Doc. 1.] Herd does not explain how he sought to amend his state petition. He alleges that the state district court denied his state habeas petition more than three months after he filed it. Thus, according to Herd, "after this length of time," an attorney should have been appointed to represent him. [Doc. 1.]

3. On February 2, 2009, Respondents filed an Answer, in which they agreed that Herd exhausted the two above-stated claims. [Doc. 13, ¶ 7.] Respondents do not challenge the timeliness of Herd's federal habeas petition, and the Court concludes it was filed within the required one-year limitation period.

4. Respondents argue, in part, that Herd failed to raise any federal constitutional violation subject to review under § 2254 and that his petition should be denied and dismissed, with prejudice.

5. On February 11, 2009, Herd mailed a letter to the United States Magistrate Judge's chambers which was docketed as a letter, possibly requesting amendment of his petition. [Doc. 10.] On February 25, 2009, Herd mailed another letter to the Court's chambers, that was docketed as a letter with attachments requesting a new trial and evidentiary hearing. [Doc. 11.]

**Factual and Procedural History**

6. According to Herd's rendition of the facts, a group of young adults was having a party on June 21, 2005 in Las Cruces, New Mexico. Robert Gutierrez was hosting the party. A dispute arose between Gutierrez and Mr. Cameron McVann, one of the attendees of the party. Gutierrez's friend Aaron Dunbar threw a beer bottle that struck McVann's vehicle as McVann drove away. McVann returned to the party with Herd, Jason Koselke, Kenneth Larmey, and a woman, named Dusty. On the return to the party, the McVann group stopped at Herd's house so that Herd could retrieve a golf club. When they arrived at the party, Koselke remained in the car. The other four (McVann, Herd, Larmey and Dusty) entered the screened front porch area where Larmey broke a small pane near the front door handle. Only Larmey and Herd then entered the residence proper, with Larmey entering first. Larmey was immediately struck on the head with a beer bottle by Dunbar, and was bleeding from the injury. Herd was "dispossessed of his golf club" by a young woman who did not testify at Herd's later trial. A verbal altercation ensued. Herd helped Larmey exit the house. [Doc. 9, Ex. C, Docketing Statement.]

7. On the front porch near the door, Herd retrieved an axe left there by Gutierrez. While in the front yard, Herd and Gutierrez (who held the golf club) exchanged words with Herd seeking the return of his golf club. Gutierrez sustained a cut on his buttock from the axe which was abandoned in the front yard. Herd denies that he struck Gutierrez with the axe and testified accordingly in front of a jury. [Doc. Nos. 10, 11.] Herd jumped onto a nearby vehicle belonging to Gutierrez and smashed the windshield with his feet. Herd, Dusty, Larmey and McVann joined Koselke in the car and left. [Doc. 9, Ex. C., Docketing Statement.]

8. McVann entered a plea to reduced charges and testified for the State at Herd's trial. Larmey entered into a plea to reduced charges and did not testify for either side. According to Herd,

3

Larmey and McVann were not incarcerated. [Doc. 9, Ex. C, p. 5.] Koselke and "Dusty" were not charged and did not appear as witnesses. [Doc. 9, Ex. G.]

9. On February 1, 2006, Herd was convicted by a jury of Aggravated Battery (Deadly Weapon), Aggravated Assault (With Intent to Commit a Violent Felony), Aggravated Burglary (Deadly Weapon), Conspiracy to Commit Aggravated Burglary (Deadly Weapon), and Criminal Damage to Property (under $1000). [Doc. 9, Ex. A, C.] The State filed a Supplemental Criminal Information alleging Herd was a Habitual Criminal Offender. After hearing argument from counsel, the state court determined that Herd was a habitual criminal offender with two prior felony convictions. [Doc. 9, Ex. A, p. 2.] The convictions for aggravated battery, aggravated assault, aggravated burglary and conspiracy were each enhanced by four years in accordance with the habitual offender statute, NMSA § 31-18-17. [Id., pp. 3-4.] Herd was sentenced to a term of 25 years and 6 months, with 5 years suspended, for a total period of incarceration of 20 years and 6 months. [Id.].

10. On August 15, 2006, the Third Judicial District Court entered a Judgment and Order Partially Suspending Sentence. [Doc. 9, Ex. A.]

11. On September 7, 2006, Herd filed a Notice of Appeal. [Doc. 9, Ex. B.]

12. On November 10, 2006, Herd filed a Docketing Statement, raising two issues: (1) sufficiency of the evidence to convict him as to all counts except the misdemeanor criminal damage to property charge [Doc. 9, Ex. C, p. 4.]; and (2) Double Jeopardy violation because the convictions for aggravated burglary and aggravated assault with intent to commit a violent felony were each based on the same conduct, i.e., Herd's entry to the home while wielding the golf club. [Doc. 9, Ex. C, pp. 4-5.]

13.     On December 13, 2006, the New Mexico Court of Appeals issued a Notice of Proposed Summary Affirmance. [Doc. 9, Ex. D.] The Court's summary proposal noted, in part, that Herd's trial testimony that he did not brandish the golf club against anyone was countered by other evidence.  A jury was free to reject Herd's version of the facts.  The same was true regarding Herd's testimony that he did not cut Gutierrez with an axe.  The jury was free to reject Herd's testimony when there was a conflict in the testimony.  The Court's proposed affirmance further explained that it rejected Herd's contention that both the aggravated assault and burglary charges were based upon "unitary conduct."  Thus, the Court proposed to affirm the convictions. [Doc. 9, Ex. D, p. 5.]

14.     On March 5, 2007, Herd filed a memorandum in opposition to the proposed summary affirmance and a motion to amend the docketing statement. [Doc. 9, Ex. E.] Herd sought to add three additional issues, two challenges to jury instructions and a challenge to the aggravated burglary charge.  [Doc. 9, Ex. E, p. 1.] Herd requested that the Court reverse his convictions or remand the matter for a new trial, based on his arguments on appeal.

15.     On March 23, 2007, the New Mexico Court of Appeals issued a Memorandum Opinion affirming the convictions for primarily the same reasons stated in the proposed disposition. The Court further denied the motion to amend the docketing statement for lack of merit. [Doc. 9, Ex. F.]

16.     On April 3, 2007, Herd filed a Petition for Writ of Certiorari in the New Mexico Supreme Court, raising three issues: (1) did the Court of Appeals err in failing to reverse Herd's conviction due to improper jury instructions; (2) did sufficient evidence support the convictions; and (3) was Double Jeopardy violated by the convictions for both aggravated burglary and aggravated assault. [Doc. 9, Ex. G.]

17. On May 2, 2007, the New Mexico Supreme Court denied the petition for writ of certiorari and issued a Mandate on June 28, 2007. [Doc. 9, Ex. H. Ex. I.]

18. On June 23, 2008, Herd, acting *pro se*, filed a state habeas petition. He continued to argue that all charges for which he was convicted arose from a single transaction. He argued that because the convictions arose from a single incident, there should have been one 4-year habitual offender enhancement rather than enhancements to each of the four felony convictions. [Doc. 9, Ex. J, p. 2.]

19. On September 30, 2008, the State District Court issued an Order Summarily Dismissing Petition for Writ of Habeas Corpus and Motion to Appoint Counsel. [Doc. 9, Ex. K.] The State Court expressly examined Herd's argument that his sentence was illegally enhanced by four years as to each charge. The Court explained that it must first examine whether the conduct was unitary. If the conduct was not unitary, then the inquiry ends because there was no violation of Double Jeopardy principles. [Doc. 9, Ex. K, p. 2.] The Court concluded that the conduct by Herd that served as the basis for his charges was comprised of "four distinct acts of criminal behavior." [Id., at ¶¶ 5, 6.] Accordingly, there was no Double Jeopardy violation and Herd's sentence was legally enhanced under the Habitual Offender Statute. The Court also dismissed Herd's separately filed motion for appointment of counsel.

20. On October 20, 2008, Herd filed a Petition for Writ of Certiorari. [Doc. 9, Ex. L.] He set for the same argument concerning the alleged illegal enhancements to his sentence and further argued that the State Court's denial of his request for appointment of counsel to assist him with the habeas petition was erroneous or unlawful. He specifically stated that he was relying on the appointment of an attorney to amend his petition but none was appointed. [Doc. 9, Ex. L, p. 3.]

21.     On October 29, 2008, the New Mexico Supreme Court denied the petition for writ of certiorari. [Doc. 9, Ex. M.]

22.     On November 6, 2008, Herd filed the present federal habeas petition. [Doc. 1.]

## Discussion

### Exhaustion of Remedies

23.     A federal court may consider a petition for writ of habeas corpus only after the petitioner first presents his claims to a state court and exhausts his state remedies, unless "there is an absence of available State corrective process or circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a post-conviction attack. Dever v. Kan. State Penitentiary, 36 F.3d 1531, 1534 (10th Cir. 1994).

24.     Respondents concede that Herd exhausted the two claims set forth in his federal habeas petition [Doc. 9, ¶ 7], but argue that he did not overcome the presumption of correctness to which state court factual findings are entitled under 28 U.S.C. § 2254. They further denied that Herd suffered a violation of any federal law or federal constitutional provision. [Doc. 9, ¶¶ 4, 9-16.]

25.     Exhaustion is an issue, however, with respect to Herd's later-submitted letters and attachments to the Court, as is addressed *infra*.

### Deference to State Court Adjudications

26.     A federal court is precluded from granting habeas relief on any claim adjudicated on the merits by the state courts, unless the proceeding resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d);

Smallwood v. Gibson, 191 F.3d 1257, 1264-65 (10th Cir. 1999), *cert. denied*, 531 U.S. 833, 121 S.Ct. 88 (2000). "Federal habeas courts do not sit to correct errors of fact or to relitigate state court trials. Our jurisdiction is limited to ensuring that individuals are not imprisoned in violation of the Constitution." Thompson v. Oklahoma, 202 F.3d 283 (Table, text in Westlaw), No. 98-7158, 2000 WL 14404, at *6 (10th Cir. Jan.10, 2000), *cert. denied*, 530 U.S. 1265, 120 S.Ct. 2725 (2000).

27.     Section 2254(d) was amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which "increase[d] the deference to be paid by the federal courts to the state court's factual findings and legal determinations." Houchin v. Zavaras, 107 F.3d 1465, 1470 (10th Cir. 1997). The Tenth Circuit Court of Appeals further explained:

> Under § 2254(d)(1), a federal court may grant a writ of habeas corpus only if the state court reached a conclusion opposite to that reached by the Supreme Court on a question of law, decided the case differently than the Supreme Court has decided a case with a materially indistinguishable set of facts, or unreasonably applied the governing legal principle to the facts of the petitioner's case. 'Under § 2254(d)(1)'s unreasonable application clause . . ., a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, the application must also be unreasonable.' 'In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.' AEDPA also requires federal courts to presume state court factual findings are correct, and places the burden on the petitioner to rebut that presumption by clear and convincing evidence.

Sallahdin v. Gibson, 275 F.3d 1211, 1221-22 (10th Cir. 2002) (*relying on* 28 U.S.C. § 2254(e)(1)).

28.     Before reaching Herd's habeas claims, the Court determines whether the state court adjudicated the claims on the merits. The state court denied Herd's habeas petition by expressly explaining why his sentencing enhancement claim failed. In so doing, the State Court made a number of findings and conclusions as to Herd's claim. The State Court further denied his request that counsel be appointed to assist him with the state habeas petition. [Doc. 9, Ex. K.] In addition,

on direct appeal, the New Mexico Court of Appeals addressed Herd's argument that the convictions arose from "unitary conduct" and rejected the claim that there was a Double Jeopardy violation. [Doc. 9, Ex. F, p. 3.]

29.     Even if the State Courts' decisions were summary opinions, there is authority for the proposition that a court's summary dismissal of a habeas petition constitutes an adjudication on the merits. Aycox v. Lytle, 196 F.3d 1174, 1177-78 (10th Cir. 1999) (affording deference under the AEDPA, to state court's rejection of claim's merit, despite lack of any reasoning); Weeks v. Angelone, 176 F.3d 249, 259 (4th Cir. 1999), *aff'd*, 528 U.S. 225, 120 S.Ct. 727 (2000); Swann v. Taylor, 173 F.3d 425 (Table, Text in Westlaw), 1999 WL 92435 at *11 (4th Cir.), *cert. denied*, 526 U.S. 1106, 119 S.Ct. 1591 (1999). *See also* Wright v. Angelone, 151 F.3d 151, 157 (4th Cir. 1998) (refusing to presume that a summary order indicated a cursory or haphazard review of a petitioner's claims). It is clear that Herd's claims were adjudicated on the merits in state court and are, therefore, subject to review under the standard set forth in 28 U.S.C. § 2254(d).

        **A.**     **Enhancements under Habitual Offender Act**

30.     Herd makes no argument that federal law was misapplied or that an unreasonable factual determination was made by the state court, as 28 U.S.C. § 2254(d)(1) and (2) require. The habitual offender enhanced is governed by New Mexico state law, § 31-18-17 (2003). Herd was properly found to be a habitual offender with two prior felony convictions. He was subject to a habitual offender enhancement of four years for each felony conviction and basic sentence. § 31-18-17(B). The state courts determined that the habitual offender enhancements to Herd's sentence were proper. Any factual findings made by state courts are subject to the presumption of correctness. 28 U.S.C. § 2254(e)(1).

31. Herd's federal habeas petition impermissibly attempts to relitigate a state post-conviction proceeding and presents no federal grounds for relief. *See* Fryar v. Peterson, 259 F. App'x 83, 84 (10th Cir. Dec. 13, 2007) (court lacked jurisdiction under § 2254 to consider inmate's claim that a habitual-offender enhancement was improper because federal habeas court's review is limited to "violation[s] of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a)).

32. A claim that New Mexico courts misinterpreted or misapplied New Mexico law is not grounds for habeas relief. *See* Morris v. Burnett, 319 F. 3d 1254, 1268 (10th Cir.), *cert. denied*, 540 U.S. 909 (2003) (review under § 2254 confined to alleged errors of federal, not state, law); Scrivener v. Tansy, 68 F. 3d 1234, 1238 (10th Cir. 1995), *cert. denied*, 516 U.S. 1178 (1996). The issue of whether the judge erred in imposing multiple enhancements under the New Mexico Habitual Offender Act involves an interpretation of New Mexico state law. Herd is not eligible for federal habeas relief on claims that are premised on alleged violations of only New Mexico law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law.")

33. Herd did not allege or establish that the state court proceedings resulted in a decision that was contrary to or involved an unreasonable application of federal law or that resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court proceedings. 28 U.S.C. § 2254(d). In addition, the claim is not cognizable under federal habeas law. Therefore, the Court recommends that the claim be denied.

   **B.** **Appointment of Counsel in State Habeas Proceeding**

34. Again, Herd makes no argument that federal law was misapplied or that an unreasonable factual determination was made by the state court, as 28 U.S.C. § 2254(d)(1) and (2)

require.  Herd claimed that the state district court refused to appoint defendant an attorney after he filed his state habeas petition in June 2008. [Doc. 1, p. 7.]  The appointment of counsel in a state habeas proceeding is governed by Rule 5-802(E) NMRA.  That rule provides if the court "does not order a summary dismissal . . . the court shall appoint counsel to represent the petitioner."  Rule 5-802(E)(2).  Herd's habeas petition was decided by an "Order Summarily Dismissing" his habeas petition. [Doc. 9, Ex. K.]  No response was ordered; no evidentiary hearing was held.  Thus, under the express language of the New Mexico rule, the State Court was not required to appoint counsel in the state habeas proceeding.

35. Moreover, the State Court denied or dismissed Herd's separate request for appointment of counsel. [Doc. 9, Ex. K, pp. 2-3.]  The appointment of counsel is generally considered discretionary rather than mandatory.  State v. Ramirez, 78 N.M. 418, 419-20 (1967).

36. This federal habeas claim also attempts to re-litigate matters concerning a state post-conviction proceeding.  Herd did not allege a federal constitutional violation, and the claim is not cognizable under federal habeas law.  Therefore, the Court recommends that the claim be denied. *See* LaVoy v. Snedeker, 2004 WL 3778602 (D.N.M. Mar. 9, 2004) (finding that state court's decision not to hold an evidentiary hearing, as authorized by Rule 5-802(E) is not cognizable as a federal habeas claim because, at most, it would be an error of state law).

   **C.** **Herd's Letters to Court, Motion for New Trial, Request for Evidentiary Hearing, and Attached Affidavit from Larmey**

    *I.* *General Description of Herd's Letters and Attachments*

37. In February 2009, Herd mailed two letters to the Court's chambers directly.  Both letters generally set forth the same arguments and contain similar attachments. The Court docketed them as letters. [Doc. Nos. 10, 11.]  Herd claims in the letter portion of the filings that at his state

court trial, the state prosecutor intimidated his only witness (Larmey) who did not testify on Herd's behalf, but whose affidavit Herd now attaches to his letters.

38.     Herd recounts the entire incident that led to his arrest and argues again that he did not hit and injure Gutierrez with an axe.  Instead, he claims that he picked up the axe to keep other people away from him so that he could help remove Larmey from the scene since Larmey was bleeding and injured.  In his letters, Herd alleges that Larmey grabbed the axe from Herd at one point and assaulted Gutierrez with the axe. [Doc. 10.]

39.     Attached to both letters is a motion for new trial, handwritten by Herd, containing the State Court caption in Herd's criminal proceeding, including the state court criminal cause number, 05-884.  The motions for new trial contend that Larmey has come forward with a sworn affidavit "verifying he's the one who committed all crimes in this criminal cause of action, and maintains Troy Herd's innocence. . . ."  This motion for new trial, although captioned in state court, was not filed in state court. [Doc. 9, Ex. N, State Court Docket Sheet.] One motion for new trial is signed by Herd and notarized on February 18, 2009. [Doc. 11, Exhibit.][2]

40.     Larmey's affidavit is generally supportive of Herd but states only that Larmey grabbed the axe from Herd, dropped it at Gutierrez's feet and that the wooden handle hit below Gutierrez's knee. [Doc. Nos. 10, 11, Larmey Affidavit.] The affidavit does not explain how Gutierrez was struck and injured in the buttocks by the axe.  According to his affidavit, Larmey wrote a letter to the judge on Herd's behalf "stating I did not witness Troy hit or swing the ax or any other weapons at anyone."  Presumably, Larmey wrote to the state court judge, although it is not

---

[2]In March 2009, the Court checked the State Court Docket in the Herd criminal matter and confirmed that the motion for new trial was not filed in the criminal case.  The Court make take judicial notice of this Court's own records and that of official state court proceedings. St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979).

certain when or if he wrote the judge. Larmey's affidavit is signed and notarized on March 25, 2008.

41.     Also attached to one of Herd's letters is a handwritten motion requesting an evidentiary hearing, again containing a state court caption with the criminal cause number. [Doc. 11, Exhibit.] Herd asserts that the discovery of new evidence warrants an evidentiary hearing. Again, this motion, while captioned in state court, was not filed in state court.

42.     Nor were these attachments to the letters (requests for new trial, evidentiary hearing) filed in federal court as motions that required responses or resolution by the Court. First, Herd clearly understands how to properly file a motion in federal court. He did so with his § 2254 motion and motion for free process. Indeed, the Court returned to Herd several letters he earlier sent to the Court's chambers with a letter informing Herd that it was improper to correspond with the court on matters of this nature. The Court's December 5, 2008 letter to Herd further advised him that if he had issues to raise in his case, he should do so by formal motion. However, instead of filing motions, Herd elected to submit additional correspondence to the Court. *Ex parte* communications with the Court are improper, and the Court could disregard Herd's correspondence on that basis alone. However, in liberally reviewing pleadings drafted by *pro se* litigants, the Court addresses the letters and attachments submitted by Herd. *See* Haines v. Kerner, 404 U.S. 519, 520-21 (*pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers"), *reh'g denied*, 405 U.S. 948 (1972).

      ii.     *Requests by Herd*

43.     It is not clear what relief Herd seeks through the letters and attachments sent directly to the Court's chambers, particularly because they are not captioned in federal court and were not

filed as motions in this case. They are problematical because Herd's § 2254 motion was fully briefed and ready for resolution, before the recently filed letters arrived.

44. However, in liberally construing Herd's pleadings, the letters might be characterized as a request by Herd to amend his § 2254 petition to add new claims. For example, Herd may allege a claim of prosecutorial misconduct, i.e., that the DA intimidated his only witness and prevented Larmey from testifying on his behalf at Herd's trial. [Doc. 10.] Herd also claims he was not totally innocent but innocent as to some charges based on newly discovered evidence, i.e., Larmey's affidavit statement.

45. First, the Court notes that while a habeas petition may be amended or supplemented, amendment must comport with the rules of procedure applicable to civil actions. 28 U.S.C. § 2242. The pertinent rule of civil proceeding regarding amendment of pleadings is Federal Rule 15(a). The rule states that before being served with a responsive pleading, a party may amend its pleading once as a matter of course. Fed. R. Civ. P. 15(a)(1)(A). However, here, Respondents already filed an Answer before Herd submitted his letters to the Court. Other amendments of pleadings are allowed only with the opposing party's written consent or if the court grants leave for amendment. Fed. R. Civ. P. 15(a)(2). There is no indication that the opposing party consented to an amendment, nor did the Court authorize an amendment of the petition. Thus, the Court could dismiss Herd's request to amend on this ground as well, but instead elects to address the two possible new claims that Herd seeks to add.

### iii. Prosecutorial Misconduct

46. To the extent, Herd seeks to add a claim of prosecutorial misconduct to his § 2254 petition, the Court observes that Herd did not exhaust this claim either on direct appeal or in the state habeas proceedings. The information alleging that the DA prevented Herd's only witness, Larmey,

14

from testifying was known, at the latest, when Larmey signed and notarized his affidavit – March 25, 2008. Thus, it was known or available three months before Herd filed his state habeas petition on June 23, 2008. [Doc. 9, Ex. J.] Because Herd did not present this claim to the state courts, it was not exhausted in accordance with 28 U.S.C. § 2254(b)(1)(A).

> *iv.   Actual Innocence Based on New Evidence*

47.   Again, there is no showing that Herd attempted to exhaust this claim on direct appeal or in the state habeas petition, even though Larmey's affidavit was available before Herd filed his state habeas petition. In addition, based on the facts, it is doubtful that Larmey's affidavit or Herd's argument truly constitute "new evidence" that was not discoverable either at the time of trial or before Herd filed his state habeas petition. It is equally doubtful that Larmey's vague affidavit testimony constitutes evidence that could exonerate Herd because Larmey does not admit to striking Gutierrez with the axe. Because Herd did not present this claim to the state courts, it was not exhausted in accordance with 28 U.S.C. § 2254(b)(1)(A).

48.   In addition, a claim "based on newly-discovered evidence generally does not state a ground for federal habeas relief absent an independent constitutional violation in the underlying trial." Dorsey v. McKune, 553 F. Supp. 2d 1287, 1301 (D. Kan. 2008) (*citing* Clayton v. Gibson, 199 F. 3d 1162, 1180 (10th Cir. 1999) (internal quotation omitted)*, petition for writ of certiorari filed*, March 2, 2009. "The Supreme Court has left open the possibility that a 'truly persuasive demonstration' of actual innocence could warrant federal habeas relief, although the threshold showing 'would necessarily be extraordinarily high.'" Id. (internal citations and quotations omitted).

49.   Here, Herd did not demonstrate the existence of an independent constitutional violation in the underlying trial. Nor did he provide a "truly persuasive demonstration" of actual innocence, in view of the extraordinarily high threshold showing that is required. Indeed, Herd

15

admits he is not entirely innocent in his letters to the Court. "I'm not saying I'm totally innocent but I don't deserve 20 years. My kids need me!" [Doc. 10.] Moreover, as stated above, Larmey's affidavit is not strong evidence of Herd's "actual innocence" as to any of the charges. Thus, the claim, even if considered exhausted, would be denied on its merits.[3]

50.     While the Court should "freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), amendments need not be allowed if they are futile. District courts may withhold leave to amend for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment." Foman v. Davis, 371 U.S. 178, 182 (1962).

51.     Because Herd did not exhaust any of the proposed claims that might be contained in his letters to the Court or they cannot survive on the merits even if exhausted, the Court recommends that a motion to amend Herd's § 2254 motion be denied.[4]

---

[3]Even if the "new evidence" were such that it significantly altered the nature of the petitioner's claims, the claims still must be dismissed for failure to exhaust. "The state court, which has never been presented with this critical evidence, must be given the opportunity to evaluate the claim in its new posture and to make the relevant findings of fact to which the federal courts must in turn defer." Demarest v. Price, 130 F.3d 922, 935-36 (10th Cir. 1997) (*relying in part on* Brown v. Estelle, 701 F.2d 494, 495 (5th Cir.1983)) ("Where a federal habeas petitioner presents newly discovered evidence or other evidence not before the state courts such as to place the case in a significantly different and stronger evidentiary posture than it was when the state courts considered it, the state courts must be given an opportunity to consider the evidence.").

[4]Herd's letter requests to amend, most likely, fail for another reason – they are untimely. Herd's original § 2254 petition was timely filed within the one-year statute of limitations. However, based on the Court's calculations, the letter requests to amend, filed in February 2009 would be untimely in view of the one-year limitations period. Moreover, the proposed amendments are totally separate and distinct from the initial claims raised and would not "relate back" in accordance with provisions of Fed. R. Civ. P. 15(c). *See* United States v. Espinoza-Saenz, 235 F.3d 501 (10th Cir. 2000) (finding that untimely amendment to § 2255 petition did not relate back and therefore, was properly denied).

**Recommended Disposition**

52. The Court concludes that neither of Herd's claims entitle him to federal habeas relief. The Court also determines that if Herd intended to seek permission to amend his petition to add new claims, such amendment would be futile. Therefore, the Court recommends that Herd's § 2254 petition be denied, that any request to amend be denied, and that the matter be dismissed, with prejudice.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge